**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0043n.06

**No. 06-3670**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 25, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| DWAINE A. MC ELROY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MARTIN, ROGERS, Circuit Judges, and REEVES, District Judge.[*]

ROGERS, Circuit Judge. Dwaine A. McElroy, convicted and sentenced to a total of 264 months' imprisonment for robbing a delivery truck, appeals the district court's imposition of his sentence. McElroy argues that his sentence is procedurally and substantively unreasonable because he pleaded guilty under the impression that there was an agreement that the 84-month portion of his sentence for brandishing a firearm during the robbery would be reduced to 60 months. Because McElroy's plea was made knowingly and voluntarily without any plea agreement, and because any confusion created when the district court referred to an agreement for 60 months arose after McElroy's guilty plea but before he had to decide whether to move to withdraw that plea, we affirm.

---

[*]The Honorable Danny Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

On December 20, 2005, McElroy pleaded guilty to charges that he interfered with commerce by robbery, that he brandished a firearm during that robbery, and that he was a felon in possession of a firearm. Immediately after McElroy pleaded guilty, the district court summarized the basis for all three charges and McElroy stated that he understood the nature of the charges. The court then asked McElroy whether he understood that upon "conviction on all three counts you are facing on Count 1 a term of imprisonment of 20 years; on Count 2 a mandatory minimum of at least seven years; and on Count 3, the armed career criminal charge, a mandatory minimum of 15 years to life . . . ." McElroy's attorney answered that McElroy admitted the factual basis of the charges. The court then asked the parties whether there was a plea agreement. McElroy, his attorney, and the Government all stated that there was no plea agreement and no promises had been made to McElroy. The district court then stated that "Mr. McElroy understands the nature of the charges against him, that his plea is voluntary and intelligent, and that there is a substantial basis for the plea," and asked McElroy whether he was still certain he wanted to plead guilty. McElroy said yes.

On January 13, 2006, McElroy's attorney filed a Motion to Withdraw as Counsel, stating that McElroy was dissatisfied with counsel and "was unaware of what he pled guilty to." McElroy's counsel also stated that McElroy indicated that he wanted to withdraw his earlier guilty plea. At the sentencing hearing on January 27, the district judge granted the motion to withdraw as counsel and appointed McElroy new counsel. McElroy's new counsel attended the sentencing hearing.

Although McElroy never made a formal request to withdraw his guilty plea, the parties agreed at the sentencing hearing on January 27 to hold consideration of any request by McElroy to

withdraw his guilty plea in abeyance to give McElroy time to go over the issue with his new counsel. In the context of this discussion, the district court referred to an agreement that McElroy would serve 60 months rather than 84 months for the brandishing charge: "so you have to measure that—oh. That's nice. Apparently there is an agreement of 60 months added on Count 2 instead of the 84. I missed that change." After asking McElroy's counsel how long he would need to discuss the issues with McElroy, the judge set the matter for sentencing or trial in April, depending on whether McElroy ultimately decided to withdraw his guilty plea. The clerk requested that the parties notify the court whether McElroy wished to withdraw his guilty plea by March 31. The judge mentioned a 60-month agreement once again while discussing the latest sentencing report by stating, "[t]he revised [sentencing report] I have indicates that the advisory guideline on Counts 1 and 3 is 262 to 327 months, and then it says a mandatory minimum consecutive term of at least 84 months. Apparently somebody agreed to 60 months before."

The parties came before the district court on March 29 to resolve the plea issue. After concluding that McElroy had never officially moved to withdraw his guilty plea, the parties discussed sentencing and McElroy's counsel stated that McElroy was under the impression that his former counsel was able to get the 84-month sentence reduced to 60 months. The Government responded that at the previous hearing, counsel for the Government "confused this case with another case and confused the plea discussions I had with [McElroy's former counsel] and it was mentioned by me it was a five year period. But at the time of the plea, he pled to seven years because he pled straight up without a plea agreement." McElroy's counsel stated that McElroy "heard 60 months in

the courtroom, and that was on January 27th." The judge then stated, "at the time he actually pled in December, I advised him that he was facing . . . a mandatory minimum of at least seven years." Counsel for the Government then apologized to the court, McElroy, and counsel, but reiterated that the mistake was not something McElroy relied on because it happened after the plea. The court then decided to set sentencing for April 6, rather than proceeding that day, in order to give McElroy an opportunity to discuss his options with his counsel.

At the April 6 hearing, McElroy's counsel stated that he had an opportunity to meet with McElroy, discuss his options, and review the final presentence report. Later in the hearing, without objection and without filing a motion to withdraw his guilty plea, McElroy received two 180-month concurrent sentences for Counts 1 and 3, and an 84-month sentence for Count 2, to run consecutively to the concurrent 180-month sentences. McElroy timely appealed, claiming that his sentence was substantively and procedurally unreasonable.

McElroy's sentence is both substantively and procedurally reasonable because it is the minimum sentence allowed by statute and because McElroy's guilty plea was made knowingly and voluntarily. Because McElroy brandished a firearm during the robbery, and because McElroy's previous convictions classified him as an armed career criminal, 264 months was the minimum sentence he could have received and the district court did not abuse its discretion in imposing a 264-month sentence. Regardless of the discretion the district court chose to exercise with respect to Count 1, McElroy was required by statute to serve 264 months' imprisonment—180 months for Count 3 and 84 months for Count 2, consecutive to the sentences for Counts 1 and 3. Sentencing

courts and appellate courts are bound by minimum sentences set by statute, and consideration of the

substantive and procedural reasonableness of such sentences is not appropriate. *United States. v.*

*Higgins*, 557 F.3d 381, 397-98 (6th Cir. 2009). As this court reasoned in *Higgins*, where a defendant

has properly been sentenced to a statutory mandatory minimum, no remand is warranted for

unreasonableness, and "even were we to conclude that [the defendant's] sentence is substantively

unreasonable, the statutory mandatory minimum would continue to bind the district court, and

remand would not be appropriate." *Id.* at 398.

McElroy does not challenge the statutory basis for his sentence, but instead argues that his

sentence is unreasonable because his guilty plea was not knowingly and intelligently made.

However, the district court's admonishments and questions posed directly to McElroy at the plea

hearing establish that McElroy's plea was knowing and intelligent. "The longstanding test for

determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent

choice among the alternative courses of action open to the defendant.'" *Railey v. Webb*, 540 F.3d

393, 417 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). Here, the district court

summarized the charges against McElroy immediately following his plea and asked McElroy

whether he understood the charges. When McElroy responded that he did understand the charges,

the district court then informed him that he was facing a term of imprisonment of 20 years on Count

1, a mandatory minimum of at least seven years on Count 2, and a mandatory 15 years to life on

Count 3, as well as periods of supervised release and fines related to those charges. The court also

informed McElroy of the rights he was waiving by pleading guilty and had the Government recite

the factual basis for the charges. McElroy's attorney agreed that there was a substantial factual basis for the charges to which McElroy pleaded guilty, and counsel stated that he had been over the evidence and discussed the facts with McElroy. Finally, the district court asked McElroy directly whether anyone had made any promises to encourage him to plead guilty, or whether anyone had threatened him in relation to his plea. McElroy answered no to both questions. Only then did the court state on the record that McElroy understood the charges against him, that McElroy's plea was voluntary and intelligent, and that there was a substantial basis for the plea, and further inform McElroy that the judge was responsible for the sentence. The judge then asked McElroy once again whether he still wanted to plead guilty. McElroy responded, "Yes, your honor." Where, as here, a judge ensures that the defendant "has a full understanding of what the plea connotes and its consequence . . . [the judge] leaves a record adequate for any review that may be later sought, and forestalls the spin-off collateral proceedings that seek to probe murky memories." *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). The record shows that McElroy made his guilty plea knowingly and voluntarily.

McElroy argues that it was his "understanding that his prior counsel was able to get the eighty-four (84) months down to sixty (60) months or five years," but the facts do not support this argument. The only evidence of this agreement that McElroy cites is the district judge's acknowledgment, at the January 27 hearing, of "an agreement of sixty months added on to Count Two instead of the eighty-four (84)." But this statement occurred over a month *after* McElroy's guilty plea, and thus could not have affected his plea. Any prejudice McElroy suffered in relation

to the Government's admittedly regrettable mistake was cured by the district court's grant of additional time before sentencing for McElroy to weigh his options with his new counsel. At the March 29 hearing, when McElroy's counsel told the court that McElroy heard a 60-month agreement mentioned in the court room, the district court agreed not to go forward with sentencing that day, choosing instead to postpone sentencing until April 6 to give McElroy a chance to discuss his options with his attorney. At the final sentencing hearing, McElroy's counsel informed the court that he had reviewed the final presentence report with McElroy personally. Thus, when McElroy proceeded to sentencing without objection on April 6, not only was his original guilty plea knowing and informed, but his later decision not to withdraw that plea represented a careful weighing of his available options.

Affirmed.